UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DUSTIN JADE MORGAN,<br><br>           Plaintiff,<br><br>   v.<br><br>LANCE STEVENSON, State of Idaho Fifth Judicial District Court Prosecuting Attorney; STATE OF IDAHO FIFTH JUDICIAL DISTRICT COURT IN AND FOR THE COUNTY OF MINIDOKA; and STATE OF IDAHO SIXTH JUDICIAL DISTRICT COURT IN AND FOR THE COUNTY OF BANNOCK,<br><br>           Defendants. | Case No. 4:19-cv-00297-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

       Plaintiff Dustin Jade Morgan, an inmate in the custody of the Bannock County Jail, is proceeding pro se in this civil rights action. Pending before the Court is Defendants' Motion to Dismiss. (Dkt. 7.) Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following order granting Defendants' Motion to Dismiss and dismissing the Complaint without prejudice. Plaintiff may file an amended complaint within 28 days after entry of this Order.

1. **Standard of Law Governing Motions to Dismiss**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Dismissal is also appropriate where the plaintiff has included allegations disclosing an absolute defense or bar to recovery. *See Weisbuch v. County of Los Angeles,* 119 F.3d 778, 783 at n.1 (9th Cir. 1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts.").

A complaint fails to state a claim for relief if the factual assertions in the complaint are insufficient for the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, a complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative

explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court generally should not consider materials outside the complaint and pleadings. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

A court may take judicial notice of a fact that is "not subject to reasonable dispute" in that the fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), such as "records of state agencies and other undisputed matters of public record," *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004). Judicial opinions of other courts are appropriately subject to judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001), *abrogated on other grounds as stated in Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Specifically, the Court may judicially

notice the existence of the opinion—which includes the stated reasoning of the authoring court—but not the facts recited in that opinion.[1] *Id.*

2.  **Factual Allegations**[2]

Plaintiff alleges that, in January 2010, he was criminally charged in Idaho state court. Soon after, he was arrested and incarcerated in Montana. Idaho authorities lodged detainers against Plaintiff but "failed to extradite even after [Plaintiff] waived his rights." (Dkt. 1 at 6.) Over four years later, Plaintiff was released from Montana prison and returned to Idaho, and his initial hearings in the Idaho case were held in August 2015.

Plaintiff entered a conditional guilty plea and appealed the trial court's denial of his motion to dismiss for denial of his statutory right to a speedy trial. *Morgan*, 400 P.3d at 641. The Idaho Court of Appeals remanded for further proceedings and additional factual findings. *Id*. at 644–45. The 2010 criminal charges against Plaintiff were dismissed in October 2017. (Dkt 1 at 6.)

Plaintiff also alleges that, "[s]ince his arrest in 2010 and subsequent release in 2014, [Plaintiff] has been habitually pursued by law Enforcement even in neutral locations such as convenience store parking lots. (*Id*.) Plaintiff was held without charge in the Bannock County Jail in February 2017 for fourteen days. In July 2017, he was

---

[1] For purposes of this decision, the Court takes judicial notice of the existence of the opinion of the Idaho Court of Appeals in the criminal case against Plaintiff stemming from the 2010 charges. *See State v. Morgan*, 400 P.3d 638, 641 (Idaho Ct. App. 2017), review denied (Idaho Aug. 30, 2017).

[2] The Court considers only the factual allegations contained in the Complaint itself. *See Schneider v. Cal. Dept. of Corr.,* 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

arrested on Montana charges, which were later dismissed. (*Id.*) Plaintiff also states that he was arrested on June 24, 2019 on other charges and that he is currently facing "revocation in Montana for the third time." (*Id.*)

**3.     Discussion**

For the following reasons, the Court will grant Defendant's Motion to Dismiss and allow Plaintiff an opportunity to amend the Complaint to address the deficiencies identified in this Order.

   **A.     *Federal Law Claims***

      i.     Standards of Law

Plaintiff brings his federal claims under 42 U.S.C. § 1983, the federal civil rights statute. (Dkt. 1 at 3.) To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Governmental officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at

677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09.

To bring a § 1983 claim against a municipality—a local governmental entity such as Bannock County, Minidoka County, or the Fifth and Sixth Judicial District Courts—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or

entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or

damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

Plaintiff asserts violations of the following federal constitutional or statutory provisions: (1) the Fourth, Fifth, Sixth, and Eighth Amendments; (2) the federal Speedy Trial Act; and (3) the Interstate Agreement on Detainers ("IAD") and the Interstate Compact for Adult Offender Supervision ("ICAOS"). (Dkt. 1 at 4.)

However, the federal Speedy Trial Act does not apply to state court prosecutions like the one challenged by Plaintiff. Neither the IAD nor the ICAOS provides a private right of action. *M.F. v. State of New York Exec. Dep't Div. of Parole*, 640 F.3d 491, 496–97 (2d Cir. 2011); *Van Riper v. U.S. Marshall for E. Dist. of Tennessee*, 815 F.2d 81 (Table) (6th Cir. Feb. 2, 1987) (unpublished); *Durham v. City of Philadelphia*, No. CV 17-5152, 2019 WL 3202506, at *10 (E.D. Pa. July 16, 2019) (unpublished). And the Fifth Amendment guarantees the right of indictment in federal criminal proceedings, the rights to be free from double jeopardy and from compelled self-incrimination, the right to due process from the federal government, and the right to just compensation for the taking of property—none of which appears to be implicated by Plaintiff's factual allegations.

Plaintiff's claims under the Fourth, Sixth, and Eighth Amendments are governed by the following constitutional standards. The Fourth Amendment protects against false arrest. Generally speaking, "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981). Probable cause exists where the "facts and

circumstances [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Gerstein*, 420 U.S. at 111.

Where an arrest is made pursuant to a warrant, the arrest violates the Fourth Amendment if "a reasonably well-trained officer in [the defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). If an arrest warrant contains allegedly false statements, a plaintiff may establish a colorable § 1983 claim if (1) the officer who made the statements in the warrant did so knowingly and intentionally or with reckless disregard for the truth, and (2) the false statements were material to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155 (1978); *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000).

When a detention occurs as the result of a false arrest, a false imprisonment claim arises under the Fourteenth Amendment's protection against deprivations of liberty without due process. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979). Under § 1983, a plaintiff must meet the elements of common law false imprisonment[3] and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). The plaintiff also must show that the persons detaining him were involved in, or aware of, the wrongful nature of the arrest. *Id*. at 1526-27. An arrest and subsequent imprisonment remain false,

---

[3] The elements of common law false imprisonment in Idaho are (1) restraint of the physical liberty of another (2) without legal justification. *Clark v. Alloway*, 170 P.2d 425, 428 (Idaho 1946).

however, only until "the claimant becomes detained pursuant to legal process"—that is, when criminal proceedings have begun. *Wallace v. Kato*, 549 U.S. 384, 397 (2007).

Plaintiff also appears to assert claims of malicious prosecution under the Due Process Clause. A plaintiff asserting a malicious prosecution claim must plausibly allege "that the defendants prosecuted [the plaintiff] with malice and without probable cause, and that they did so for the purpose of denying [the plaintiff] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995).

The Sixth Amendment guarantees, among other things, the right to a speedy trial. The Supreme Court has described this right as "generically different from any of the other rights enshrined in the Constitution for the protection of the accused." *Barker v. Wingo*, 407 U.S. 514, 519 (1972). The speedy trial right exists not only to safeguard the rights of the defendant, but there is also "a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Id*. The right is "necessarily relative, … consistent with delays[,] and depends upon circumstances." *Id.* at 522 (internal quotation marks omitted).

The "amorphous" right to a speedy trial is not subject to rigid application but, rather, is analyzed under a balancing test. *Id.* at 522, 530. The Court must consider four factors in considering whether a habeas petitioner has established a speedy trial violation: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant. *Id*. at 530-32. These factors

are related "and must be considered together with such other circumstances as may be relevant." *Id*. at 533.

The first factor, the length of the delay, depends on the circumstances of the case. For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex, conspiracy charge." *Id.* at 531. "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*. at 530.

The second *Barker* factor, the reason for the delay, is closely related to the first. A prosecutor's "deliberate attempt to delay the trial in order to hamper the defense" will be weighed heavily against the government, while a "more neutral reason such as negligence or overcrowded courts" will count less against the government. *Id*. Further, "a valid reason, such as a missing witness, should service to justify appropriate delay." *Id.*

With respect to the third factor, the "strength of [the defendant's] efforts" in asserting the right to a speedy trial will be affected by the other *Barker* factors, and the invocation of the right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id*. at 531-32. A failure to assert the right to a speedy trial "will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532; *see also id.* at 534-35 ("Despite the fact that counsel had notice of the motions for continuances, the record shows no action whatever taken [for over three years] that could be construed as the assertion of the speedy trial right…. [T]he record

strongly suggests that while [the defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried.") (footnote omitted).

The fourth factor, prejudice to the defendant, "must be considered in the light of the interests the speedy trial right was designed to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *United States v. MacDonald*, 435 U.S. 850, 858 (1978) (quoting *Barker*, 407 U.S. at 532). The limitation on the defendant's ability to mount a defense is the "most serious," because it "'skews the fairness of the entire system.'" *Id.* at 858 (quoting *Barker*, 407 U.S. at 532).

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment, and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). To exhibit deliberate indifference, a defendant "must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. If a [governmental official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

The Eighth Amendment also prohibits incarceration beyond a prisoner's full-term release date. To prevail on such a claim, a plaintiff must show that the defendant "was deliberately indifferent to [the prisoner's] right to be released at the end of his sentence by knowing or having reason to know of a pattern of late releases and failing to take steps to correct the problem." *Strong v. Dir. of Idaho Dep't of Correction*, No. CV-04-581-EJL, 2006 WL 3355005, at *4 (D. Idaho Nov. 16, 2006) (unpublished). A plaintiff must also show that the defendant actually caused him to be incarcerated past his full-term release date. *Id.* at *7.

      ii.      <u>Most of Plaintiff's Federal Claims Are Barred by the Statute of Limitations</u>

Federal civil rights actions arising in Idaho are governed by a two-year statute of limitations. Idaho Code § 5-219; *see also Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding that state statute of limitation for personal injury actions governs § 1983 actions), *abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). Although the state statute of limitations governs the time period for filing a § 1983 claim, federal law governs when that claim accrues, or arises. *Elliott v. City of*

*Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994). Under the "discovery rule," a claim accrues "when the plaintiff knows or has reason to know of the injury" that is the basis of the claim. *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (internal quotation marks omitted). That is, the statute of limitations begins to run when the plaintiff becomes aware of the actual injury—not "when the plaintiff suspects a legal wrong." *Id*.

If a plaintiff cannot show that his claim accrued during the statute of limitations period, he still may file a lawsuit beyond the limitations deadline if he can show that the statute should have been tolled (or stopped) for a certain period of time during the period within which he should have filed the lawsuit. State tolling law applies to § 1983 actions unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464-65 (1975); *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008).

Idaho law allows for statutory tolling of the limitations period for a person's juvenile status or insanity. Idaho Code § 5-230. But because the Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute," equitable tolling is not available in Idaho. *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007).

The doctrine of equitable *estoppel*, however, is available in Idaho. While it "does not 'extend' a statute of limitation," equitable estoppel works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or

constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co., v. Chemetics International, Inc.*, 887 P.2d 1039, 1041 (Idaho 1994). Equitable estoppel requires a showing of four elements: "(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id*.

Plaintiff filed the Complaint in this case on July 30, 2019. Therefore, any claims that arose before July 30, 2017—as most of Plaintiff's claims did—appear to be time-barred. The only claims that might have arisen within the two-year statute of limitations period are Plaintiff's speedy trial and malicious prosecution claims. The statute of limitations for these claims appears to have begun to run in October 2017, when the charges against Petitioner were dismissed.[4] *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 921 (2017) (stating that statute of limitation for malicious prosecution claim does not start to run until criminal proceedings are terminated in plaintiff's favor).

With respect to Plaintiff's other claims, the last date identified in the Complaint that relates to those claims is sometime in February 2017. (*See* Dkt. 1 at 6 ("Morgan was incarcerated in the Bannock County Detention Center in February, 2017 for 14 days.").

---

[4] In contrast, Plaintiff's claims for false arrest and false imprisonment arose no later than January 2010, when he was criminally charged in Idaho state court. *See Wallace*, 549 U.S. at 397.

MEMORANDUM DECISION AND ORDER - 15

The July 6, 2017 and August 30, 2017 dates in the Complaint refer only to Plaintiff's Montana charges, not his Idaho charges; Plaintiff does not identify any named Defendant as causing any injury arising from those charges. (*Id*.) And, although Plaintiff was arrested on June 24, 2019, those charges are "independent of this situation," though Plaintiff contends—without explanation—that the charges are "interrelated." (*Id*.)

Therefore, as set forth in the Complaint, most of Plaintiff's claims are barred by the statute of limitations.

### iii. Plaintiff's Speedy Trial and Malicious Prosecution Claims Against Defendant Stevenson Are Barred by the Doctrine of Absolute Prosecutorial Immunity

Prosecutors have absolute immunity for actions taken in the performance of an integral part of the criminal judicial process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Such actions include initiating and pursuing a criminal prosecution, *id.* at 410, preparing and filing charging documents, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997), participating in hearings, and "making false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991).

Absolute prosecutorial immunity extends to speedy trial and malicious prosecution claims. *Imbler*, 424 U.S. at 424; *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) ("This immunity covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution."); *Ledwith v. Douglas*, 568 F.2d 117, 119 (8th Cir. 1978) (holding that a "claim for damages for … denial of a speedy trial [is] barred by the doctrine of prosecutorial immunity"); *Prince v. Wallace*, 568 F.2d 1176, 1178 (5th Cir. 1978) (per curiam) (upholding summary judgment on Sixth Amendment

speedy trial claim against prosecutors "because the actions they are alleged to have taken and upon which the complaint is based against them fall within the purview of the doctrine of absolute prosecutorial immunity") (Appendix). Therefore, Defendant Stevenson is absolutely immune from the only claims that appear to have been timely filed—the Sixth Amendment speedy trial claim and the malicious prosecution claim.

        iv.       <u>Notwithstanding the Statute of Limitations and the Doctrine of Absolute Immunity, the Complaint Still Fails to State a Plausible Claim for Relief</u>

For several additional reasons, Plaintiff's Complaint fails to state a federal claim upon which relief may be granted.

The Complaint does not plausibly allege that any Defendant acted with the requisite state of mind under § 1983—that is, purposely, knowingly, recklessly, or with deliberate indifference. *Kingsley*, 135 S. Ct. at 2472; *Daniels*, 474 U.S. at 332. The Complaint also does not identify any action specifically undertaken by Defendant Stevenson, though it is possible that he instituted the 2010 criminal proceedings against Plaintiff. Further, the allegations in the Complaint do not permit a reasonable inference that the official actions of which Plaintiff complains were the result of a policy or practice of Bannock County, Minidoka County, or the Fifth and Sixth Judicial Districts for those counties, nor do Plaintiff's allegations plausibly suggest that any such policy or practice amounts to deliberate indifference to Plaintiff's constitutional rights. *See Monell*, 436 U.S. at 694; *Mabe*, 237 F.3d at 1110-11.

Moreover, to the extent that Plaintiff is seeking release from confinement (*see* Dkt. 1 at 7), § 1983 does not permit such a remedy. *Preiser v. Rodriguez*, 411 U.S. 475, 500

MEMORANDUM DECISION AND ORDER - 17

(1973). Finally, to the extent Plaintiff is challenging his current state court criminal proceedings, the Court would abstain from hearing this case under *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* prohibits a federal court from hearing a civil rights action related to a pending state criminal case unless "the threat to the plaintiff's federally protected rights … cannot be eliminated by his defense against a single criminal prosecution." *Id*. at 46.

### B. State Law Claims

Plaintiff's state law claims are implausible for similar reasons. Most of them are barred by the statute of limitations, and the Complaint simply does not contain sufficient factual allegations to permit a reasonable inference that any Defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. In addition, because the Complaint fails to state a federal claim upon which relief may be granted, the Court would decline to exercise supplemental jurisdiction over Plaintiff's state law claims in any event. *See* U.S.C. § 1367(c).

### 4. Conclusion

For the foregoing reasons, Plaintiff's Complaint fails to state a plausible claim for relief, and the Court will grant Defendant's Motion to Dismiss.

**ORDER**

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss (Dkt. 7) is GRANTED, and the Complaint (Dkt. 1) is DISMISSED without prejudice.

2. Any amended complaint must be filed no later than 28 days after entry of this Order.

DATED: November 1, 2019

_____
B. Lynn Winmill
U.S. District Court Judge